## DORA MILLER, by Next Friend, vs. THE UNITED RAILWAY AND ELECTRIC COMPANY.

*Negligence—Injury Caused by Wheel of Buggy Falling Into Cable Slot.*

One of the wheels of a light buggy in which plaintiff was driving on a city street, fell into the cable slot in the middle of a street railway track, and in consequence thereof plaintiff was thrown out and injured. This action was brought against the street railway company to recover damages for the injury. Under a municipal ordinance, the defendant was bound to keep in thorough repair the part of the street covered by its tracks and two feet on either side. There was no evidence in the case to show that the street or cable slot at the place of the accident was out of repair, or that the slot was at that point wider than the authorized width. *Held*, that in order to maintain the action, the plaintiff was bound to show that the defendant was negligent in some respect and that this negligence caused the injury complained of; that it must be assumed that the cable was originally constructed by authority and in a proper manner; that the mere fact that the wheels of the buggy fell into the slot creates no presumption of negligence, because that may have happened in consequence of some defect of which the defendant had no actual or constructive notice, and that, since there is no evidence in the case of any neglect of duty on the part of the defendant, the plaintiff is not entitled to recover.

*Decided May 13th, 1908.*

Appeal from the Court of Common Pleas of Baltimore City (HARLAN, C. J.)

*Plaintiff's 1st Prayer.*—If the jury find that on the 28th day of July, 1906, the plaintiff was a passenger in a carriage driven by her father, Wolf Miller, along and upon Baltimore street, at or near its intersection with Wolfe street, and that theretofore the defendant caused and procured certain tracks to be laid thereon for the propulsion of its cars, and caused and procured within the limits of said tracks certain conduits to be constructed for cable connection with its cars by and through certain parallel openings in the middle of said tracks,

then it was the duty of the said defendant to keep so much of said street as was covered by its said tracks and extending two feet on the outer limits on either side of said tracks in thorough repair, and if the jury find that the defendant did not keep so much of said street as was covered by its said tracks and extending two feet on the outer limits on either side of said tracks in thorough repair, so that on the day and year aforesaid while the plaintiff was such passenger, in said carriage one or more wheels thereof fell through and sank in said parallel opening within said tracks, injuring the plaintiff, and that such injury to the plaintiff directly resulted because said defendant did not keep so much of said street as was covered by its said tracks and extending two feet on the outer limits on either side of said tracks in thorough repair, and not from the want of ordinary care and prudence on the part of the plaintiff in the premises directly contributing to such injury to said plaintiff, then the plaintiff is entitled to recover. (*Refused.*)

*Defendant's 2nd Prayer.*—There is no evidence in this case legally sufficient to show that the defendant had any knowledge of any defect of the street within the car track at the place of the accident, and, therefore, the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—That the burden of establishing by a preponderance of proof satisfactory to them, the state of facts alleged in the declaration, rests upon the plaintiff; and if the testimony in this case should be such as to leave the minds of the jury in a state of or even balance as to the truth of the state of facts alleged in the declaration, the verdict must be for the defendant. (*Granted.*)

*Defendant's 4th Prayer.*—That the burden of establishing a preponderance of proof satisfactory to the jury, the injuries complained of, as a result of the accident mentioned in the evidence, rests upon the plaintiff. (*Granted.*)


The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*John Hinkley* and *Frederick J. Singley*, for the appellant.

A corporation charged with the duty of keeping a highway in repair is liable for damages caused by a wheel of a vehicle going into a hole in the highway, in the absence of contributory negligence on the part of the driver. *Charles County* v. *Mandanyohl*, 93 Md. 150.

In *Knight* v. *Baltimore City*, 97 Md. 647, the case turned upon contributory negligence, the hole being of large size and readily visible and known to the driver, but the Court intimates that but for the element of contributory negligence the plaintiff's first prayer in that case would have been correctly granted, and says: "It is true that one using a highway has a right to assume that it is safe for ordinary travel, and to conduct himself accordingly, and, therefore, that he is not required to look far ahead for defects which should not exist."

In the present case there is no evidence of contributory negligence whatever. No instruction is asked for on this point, and there is no cross-examination of the witnesses along this line. It would seem to be clear that Mr. Miller had a right to assume that the railway company charged with the dnty of keeping the street-bed between its tracks in repair would not allow a spread of the cable-slot sufficient to admit a buggy wheel.

It is a *trap* which a driver seated on the right side of the carriage could not observe under his left wheel, particularly at late twilight. *Mayor and City Council of Baltimore* v. *Pendleton*, 15 Md. 12; *County Commissioners of Anne Arundel County* v. *Duckett*, 20 Md. 468, in which case the Court quotes from a Pennsylvania case: "Every highway or thoroughfare which the public has a right to use must be kept, by somebody, in such order that it can be safely used, and if serious injury happens to an individual in consequence of its bad condition those who are bound to repair must answer in damages." *Eyler* v. *County Commissioners of Allegany County*, 49 Md. 270, 271; *Gunther* v. *Dranbauer*, 86 Md. 1.

In *Campbell* v. *Elkins*, 58 W. Va. 308; 2 L. R. A. (N. S.) 159, the Court says: "Where the statute in express terms im-

poses an absolute liability on the town, it is unnecessary to allege, or to prove, notice of the defect to the town." "Hence, in determining whether an imperfection in a highway, which occasions an injury, when the traveler is not in any way at fault and has had no means of knowledge of it, is an actionable defect, the Court cannot base a negative answer on want of evidence of negligence. The town's duty is absolute, and to prevent liability, it must appear that it has provided a reasonably safe sidewalk, street or road, as the case may be."

The two following cases in Missouri as to accidents caused by excessive width of a cable slot are directly in point in the present case. In *Keitel* v. *St. Louis Cable and Western Rwy. Co.*, 28 Mo. 657, it was held: In an action against a street cable railway company for damages occasioned by the excessive and improper width of the grip slot at a particular point, it is not necessary for the plaintiff to plead or prove the defendant's knowledge of such defective condition of its roadway.

A corporation adapting and using a public street for its peculiar method of transportation is in duty bound to exact continuous inspection in order to prevent its structures from becoming a nuisance. Hence it is never necessary to prove duration of a defective condition as raising an inference of notice to the corporation by lapse of time. "If the proprietors of this new mode of transit cannot maintain their roadways without creating such nuisance in the street, they must answer for damages to travelers injured, or not maintain them at all."

In *Griveaud* v. *St. Louis Cable and Western Rwy. Co.*, 33 Mo. 458, citing the above case, the Court in its opinion says: "We cannot see how we can recede from this position without a violation of fundamental rules applicable to the streets of a city. We do not decide that the duty of the defendant is that of an insurer of the safety of its roadway. Unforeseen causes might arise, causing a temporary disarrangement, for which the defendant could not be held justly liable, but here, in any view of the evidence, the cause was one of constant occurrence (*i. e.*, heavy teams passing over it) well known to the defendant and against the effects of which it was its duty

to guard. The plaintiff's instruction given was strictly in conformity with the law as above stated and unexceptionable. There was no evidence that the slot had widened by some wholly unforeseen event, against which the defendant could not reasonably guard."

The refusal of the plaintiff's first prayer and the granting of the defendant's third and fourth prayers resulted in this case being given to the jury with two very strong instructions as to the necessity of satisfying the jury by a preponderance of proof, but with no guide as to the principles of law upon which a verdict for the plaintiff could be based.

*Joseph C. France* and *J. Pembroke Thom*, for the appellee.

The Court below was right in refusing plaintiff's first prayer, which is defective for a number of reasons:

(1) There was no evidence that "the defendant caused and procured within the limits of said tracks certain conduits to be constructed for cable connection with its cars by and through certain parallel openings in the middle of said tracks;" it did not appear whether these "conduits or openings" were constructed by the defendant; or (as the fact was) by some other company of which it was the successor in title; or that there was any conduit or opening, except a cable slot authorized and constructed according to law.

(2) It is misleading, in that it tells the jury that "it was the duty of the said defendant to keep so much of said street as was covered by its said tracks and extending two feet on the outer limits on either side of said tracks in thorough repair, and if the jury find that the defendant did not keep" this space in thorough repair, etc. This might have led the jury into thinking that the presence of the cable slot in the street, laid under proper legislative authority, constituted failure to keep in repair the space between the tracks; and they might have found for the plaintiff, even if they believed the slot to be of the proper and authorized width and in good order and condition. The prayer assumes that, even if the cable slot was authorized by the Legislature and approved as to width by

the City Engineer, nevertheless, because the wheels of the plaintiff's buggy were narrow enough to enter the slot, the defendant was negligent.

(3) There is no evidence in the case that the street was out of repair at the point where the accident occurred, the only evidence being that a buggy wheel with a one-inch tire went down into a cable slot, and the testimony of the witness Sacks that he had seen a carriage wheel go through the cable slot in this block some months before the accident does not show whether this was near where the accident happened, in the middle or at the other end of the block, or whether the cable slot was the same width throughout the block or not. There is no evidence that the slot at the point where the accident occurred was out of repair or was wider than was authorized and proper.

(4) The liability of a street railway company for the repair of streets is no greater than that which the law imposes upon a municipality. *Nellis, Street Railway Accident Law*, 222, 223; *Sanford* v. *Union R. Co.*, 16 Pa. Sup. Court, 393.

In order to render a city liable for an injury caused by a defective street or sidewalk, there must not only be a defect or obstruction causing the injury, but it must also have had due notice of such defect, or there must be circumstances from which the law will imply notice; and a city cannot be held liable for an injury resulting from a defect in a sidewalk or street, unless sufficient time has intervened for the authorities to repair the defect after they had knowledge thereof, or ought by reasonable diligence to have acquired such knowledge. *Keen* v. *Havre de Grace*, 93 Md. 34–39.

It follows, therefore, that even if the slot space was out of repair (of which no evidence was offered), the defendant was entitled to notice either actual or constructive and a reasonable opportunity to repair the defect.

Even if the condition of the cable slot could, under the facts in evidence, by any possibility be regarded in the light of a nuisance, yet if the cable slot was not constructed by the defendant, but by another company whose rights the defendant

had acquired by purchase or otherwise, notice was essential to the defendant, even though it may not have been necessary to the company constructing the tracks or the original wrong-doer. *Gueet* v. *Church Hill*, 90 Md. 689, 695; *Lion* v. *City Passenger Ry.*, 90 Md. 266, 275; *Pickett* v. *Condon*, 18 Md. 412-417; *Walter* v. *Wicomico County*, 35 Md. 385-390.

Under the prayer the jury could find for the plaintiff, if they found negligence on the part of the defendant directly contributing to the injury; it did not require the jury to find also that the father of the plaintiff, who was driving the buggy, used ordinary care and prudence, and withdrew from the consideration of the jury the question of whether or not the father was negligent in driving with an unusually narrow wheel along a cable slot. This is a serious omission, for if the father was negligent and his negligence was a direct cause of the accident, the plaintiff was not entitled to recover. *B. & O.* v. *State, use of Fryer*, 30 Md. 47-53; *Cumberland* v. *Lottig*, 95 Md. 42-48; *Holly* v. *Boston Gas Co.*, 8 Gray (Mass.) 123-134; *Waite* v. *N. E. Ry. Co.*, 96 Eng. Com. Law 719, affirmed 96 Eng. Com. Law 728; *Lifschitz* v. *Dry Dock Co.*, 67 App. Div. (N. Y.) 602-603.

It is submitted that the defendant's first prayer should have been granted, because the plaintiff had offered no evidence except such as was equally consistent with non-liability on the part of the defendant. A cable slot must have *some* width, and if the authorized width was too large for the wheel of the buggy —the defendant was not, *on that account merely*, responsible. So, also, the second prayer of the defendant should have been granted, because, if the cable slot had, without the knowledge or fault of the defendant, gotten out of repair—the defendant was entitled to some notice and opportunity to remedy the defect.

The Court below refused the first and second prayers of the defendant, and the case went to the jury on the second prayer of the plaintiff and the defendant's third and fourth prayers. It was necessary for the plaintiff: (1) To establish by a preponderance of proof, the state of facts alleged in the

declaration, which concisely charged that "in neglect and default of its said duty in the premises said defendant did not keep said street covered by its said tracks and extending two feet on the outer limits of either of said tracks in thorough repair;" and (2) to establish by a preponderance of proof, that the injuries were real and not feigned. These propositions were covered by the defendant's third and fourth prayers, and no comment thereon appears necessary, except to say that the third prayer refers to the "state of facts" alleged in the declaration, and not to all the allegations of the declaration. "State of facts" is synonymous with "case;" and it is a well settled principle that the plaintiff must establish his case in substance as it is alleged in his declaration.

BURKE, J., delivered the opinion of the Court.

This is a suit for personal injuries brought by Dora Miller, an infant, by her father and next friend, against the United Railways and Electric Company of Baltimore. The case was tried in the Court of Common Pleas and resulted in a verdict and judgment for the defendant, and the plaintiff has appealed.

The material facts briefly stated are, that on the 28th day of July, 1906, between the hours of eight and nine o'clock in the evening, Wolf Miller, the father of the plaintiff, was driving east on Baltimore street in company with the plaintiff and her sister. He was driving one horse attached to a buggy. The father sat on the right side of the buggy; Rebecca Miller, another daughter, sat immediately to his left and in the centre of the buggy; and the plaintiff sat on the left side of the buggy. When he approached the intersection of Baltimore and Wolfe streets the horse stopped, and in order to avoid an obstruction of some kind, Miller turned his horse to the left, and in doing so the left front wheel of the buggy dropped into a cable slot between the tracks of the railroad company. In trying to get the wheel out, the other wheel fell into the slot, and the horse fell in the street. Miller testified that the buggy had no top, and the tire of the wheel was about one inch wide; that as the wheel sank into the cable slot the buggy hung

down on one side, and that he and Rebecca fell over on the plaintiff; that both wheels on the right side were off the ground, and were revolving in such a manner that he could not get out on that side, and that he was obliged to get out on the left side of the buggy; that the left wheels sank in the slot up to the hubs, and that it took two men about ten minutes to get them out. There was evidence tending to show that the plaintiff was seriously injured as the result of this occurrence.

The plaintiff offered in evidence Section 24 of the Baltimore City Code of 1906, which imposes upon railroad companies using the city streets the duty to keep the streets covered by their tracks, and extending two feet on the outer limits of either side of the tracks, in thorough repair, and the declaration alleges that the injury sued for was caused by the defendant's breach of this duty. There is no evidence in the record showing when, or by whom the cable was constructed, but assuming, as we must, that it was constructed under proper authority and was so constructed as not to endanger the safety of travel upon the streets, it was necessary for the plaintiff to produce evidence tending to prove that the defendant had negligently suffered or permitted it to be and remain in an unsafe condition for travel, and that this negligence caused the injury complained of. It is not pretended that any other portion of the street covered by the tracks was out of repair, or that there was a failure of duty in any other respect on the part of the defendant.

There is not the slightest evidence in the record to show that the cable slot was out of repair at the point where the accident happened, or that it was wider than the authorized width. Negligence cannot be imputed to the defendant from the mere fact that the wheels of the buggy fell into the slot, because that may have been caused by some concealed imperfection, or by some other defect of which the defendant had no actual or implied notice. In the absence of all evidence as to the actual condition of the cable slot at the place of the accident, the case made by the plaintiff is entirely con-

sistent with nonliability on the part of the defendant, and fails to show a case of actionable negligence.

The provision of the City Code does not make the railway company an insurer of the safety of travellers using those portions of the public streets therein referred to. It imposed upon the company, in the respect mentioned, the same measure of duty as that devolved by law upon the municipality in the maintenance and care of the public streets. "Under statutes requiring street railway companies to keep in permanent repair that portion of the street between its tracks, and two feet outside thereof, a street railway company owes the public the duty to keep such portion of the pavement in repair, so that a person injured by its failure to do so may maintain a suit for damages against the company. The company is not, however, liable for defects or imperfections which may be caused by traffic, such for instance as rails becoming loose, or spikes projecting, except upon proof that it failed to repair such defects or imperfections after reasonable opportunity for ascertainment thereof had elapsed. The rules governing its duty toward those using the streets and the evidence necessary to sustain the charge of negligence are not the same as are applicable to it as a common carrier of passengers in relation to its duty to its passengers." *Nellis Street Railroad Accident Law,* p. 222.

In *Sanford* v. *The Railway Company,* 16 Pa. Sup. Court, 393, which was a suit to recover for the death of the plaintiff's horse, it appeared that the plaintiff, about half-past four in the morning, was driving his horse and wagon on a public street in the city of Philadelphia. While his horse was walking between the rails it suddenly walked into a large hole in the street, and sustained injuries which caused its death. It did not appear at the trial what caused the dangerous condition in the street; nor was it clearly shown that the hole was there previous to the accident, or that the horse was not precipitated into the ground by the unexpected cave in of the street at that point; nor whether it was the result of an inevitable accident, or caused by some default of the city, or the railway com-

pany. Under an ordinance of the city the defendant was bound to keep and maintain the street "in good order at all times." Upon the facts it was held that the plaintiff could not recover. The Court said "the duty of the municipality is to keep its streets in safe condition at all times, but its liability to keep its streets in safe condition at all times, but its liability to persons injured on account of the neglect or omission of this duty is always conditioned upon, first, a positive misfeasance in doing acts which caused the street to be out of repair, in which case no other notice to the corporation is essential to its liability, because the municipality has all the knowledge of the facts which a notice would give; or second, the neglect of the corporation to put the street in repair, or remove obstructions therefrom, or remedy causes of danger occasioned by wrongful acts of third parties, in which cases notice of the condition of the streets, or what is equivalent to notice, is necessary." 2 *Dillon on Munic. Corp.*, sec. 1020. The municipality cannot by contract impose any higher, or greater liability on its licensee than the law imposes upon the municipality; and the clause in the contract providing, "that the railway company shall keep and maintain its streets in good order at all times" would not make this defendant liable in a case where the city would not be liable provided the duty created by law had been performed by the city in accordance with the requirements of law.

In *Brown* v. *Mt. Holly*, 69 Vt. 364, where a horse was injured by stepping into an unsafe place in a culvert, the Court said: "When a defect in a highway is latent, and when a sudden and unforeseen defect occurs without fault on the part of the town, the town is not chargeable for damages resulting from such defect, unless it had been in default in respect to getting seasonable knowledge of the defect, or unless, having such knowledge, it was reasonably practicable to have repaired the defect, or put up a warning, or barrier before the happening of the accident."

The rule stated in these cases has been generally adopted by the Courts in the absence of statute, and is the one which obtains in this State.

In *Keen* v. *Havre de Grace*, 93 Md. 39, which was a suit to recover damages for an injury alleged to have been caused by defects in a side walk which the defendant was bound to keep in safe condition, we said: "Before, however, the municipality can be made liable in any case, it must be shown that it had actual or constructive notice of the bad condition of the street. As was well said in the case of *Todd* v. *City of Troy*, 61 N. Y. 509: "By constructive notice is meant such notice as the law imputes from the circumstances of the case. It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see if they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes and say they have no notice. After a street has been out of repair, so that the defect has become known and notorious to those traveling the streets, and there has been full opportunity for the municipality through its agents charged with that duty, to learn of its existence and repair it, the law imputes to it notice and charges it with negligence. If the defect be of such a character as not to be readily observable, express notice to the municipality must be shown. *Burns* v. *Bradford City*, 137 Pa. St. 367; *Cook* v. *the City Anamosa*, 66 Iowa, 430. But if it be one which the proper officers either had knowledge of, or by the exercise of reasonable care and diligence might have had knowledge of, in time to have remedied it, so as to prevent the injury complained of, then the municipality is liable."

The effect of the ordinance offered in evidence in this case was to impose upon the company that portion of the public duty which relates to keeping the parts of the streets mentioned in safe condition, and the liability of the defendant for injuries caused by its failure to discharge this duty must be determined by the same rules applicable in like cases to suits against the municipality. Tested by these principles, the evidence in this case fails to show any failure of duty by the defendant, and, therefore, the judgment will be affirmed.

*Judgment affirmed with costs.*