## Low *v.* Harrisburg Railways Co., Appellant.

*Negligence — Street railways — Construction of tracks—Proper place to stop—Province of court and jury.*

1. A street railway company, in the construction of tracks, cars and appliances, is bound to guard against dangers that are probably and reasonably to be apprehended, but not against such as are remote, and not to be foreseen.

2. Where a street railway, with the approval of the municipality, installs grooved rails in making a curved track connection at an intersection of streets, and such rails are properly laid and maintained, and are such as street railway companies generally use, the company cannot be held liable for injuries to a woman who, in alighting from a car, catches her heel in a grooved rail and is thrown down.

3. Nor, in such case, can the company be charged with negligence, if it appears that the car stopped slightly on the curve at practically the same place where cars usually stopped, and at a point at which danger was no more to be expected than at any other place along the curve.

4. On an appeal from a judgment on a verdict for plaintiff in an accident case, while the testimony of the plaintiff and proper inferences therefrom are to be construed in the light most favorable to plaintiff, it is still for the court to say if, taken as true, actionable negligence by defendant has been shown.

5. Street railway companies are not required to stop their cars with exactness at the same point where passengers are discharged, in which respect they differ from railroad companies, which provide regular platforms for stopping.

Argued May 23, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 8, May T., 1927, by defendant, from judgment of C. P. Dauphin Co., June T., 1923, No. 141, on verdict for plaintiff, in case of Mary Jane Low v. Harrisburg Railways Company. Reversed.

Trespass for personal injuries. Before WICKERSHAM, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant for $7,000, on which judgment was entered for $6,094.50. Defendant appealed.

*Error assigned,* inter alia, was refusal of judgment for defendant n. o. v.

*Arthur H. Hull,* with him *George F. Lumb* and *E. E. Beidleman,* for appellant, cited: Sligo v. Transit Co., 224 Pa. 135; Martin v. Transit Co., 282 Pa. 358; Perret v. George, 286 Pa. 221.

*Michael E. Stroup,* for appellee, cited: Carothers v. Rys., 229 Pa. 558; Coyle v. R. R., 256 Pa. 496; Cody v. Venzie, 263 Pa. 541; Marchi v. R. R., 264 Pa. 321; Hager v. Ry., 261 Pa. 359; Wagner v. Ry. Co., 158 Pa. 419; McCollum v. Rys., 51 Pa. Superior Ct. 637; Burns v. R. R., 233 Pa. 304; Thorne v. Transit Co., 244 Pa. 470.

OPINION BY MR. JUSTICE SADLER, June 25, 1927:

The defendant company operates a street railway in the City of Harrisburg. On Cameron Street, as it approaches Market at right-angles from the south, there is laid a double line of tracks, and these connect with those on Market Street by means of rails, beginning ten feet south of the house line and foot-way, extending to the right and left, and running east and west to the latter named highway. The rails of the curves are of the grooved guard type, and have the customary opening at the top of 1 and 11/16 inches, with a depth of 1¼ inches. These connecting links are laid in the highways from

the point of beginning on Cameron Street to the place of joinder on Market, and pass, between the points mentioned, over the street crossing, daily used by large numbers of people. The character of construction appears, by the undisputed evidence, to be of the kind approved by street railways generally in cities, and was installed under the direction of the municipal authorities. No defect in the manufacture, or in its condition at the time of the accident, which gave rise to the present suit, was established, nor was it shown that any one passing over the street crossing, which the grooved rail traversed, had ever suffered injury by reason of it, or that there was obvious danger in walking or driving across.

Plaintiff was a passenger on a car of defendant company, which approached the locus in quo on the evening of October 4, 1921. It was her desire to transfer to another one at Market Street. When the trolley came to a stand its wheels were partly upon the curve, as it necessarily must have been if the place for stopping was at the crossing, as appeared by the measurements on the ground. She left by the front door, stepped to the roadway, and the heel of her shoe became fastened in the groove of the rail, resulting in a fall and injury, for which she now asks to be compensated in damages. Her claim is rested on the theory that the car was not stopped at its usual place, but had moved farther onto the curve, and that permitting the passenger to there alight, with the resultant step onto the rail, constituted actionable negligence. It was her claim that some warning should have been given of the possibility of danger, particularly on account of the fact that a clear view of the highway was, to some extent, obscured, since the car threw a shadow at the point where she descended, the regular city light being located on the opposite side. The question of negligence was submitted to the jury, and a verdict rendered for plaintiff, upon which judgment was entered. This appeal followed.

In considering the claim made by plaintiff, it is to be borne in mind that nearly every fact involved is undisputed, and the one, as to which it is attempted to draw an inference of wrongdoing, is explained by the maps and measurements. Though Mrs. Low was a passenger, and is so to be considered until she alighted from the car, no presumption of negligence arises by reason of this relation, so as to shift the burden of proof on the defendant, where the evidence clearly shows the cause of the accident: Keller v. Ry. Co., 149 Pa. 65. The state of the record requires the testimony of the plaintiff, with all proper inferences deducible therefrom, to be construed in the light most favorable to her, but it is still for the court to say if, taken as true, actionable negligence by defendant has been shown: Scanlon v. P. R. T. Co., 208 Pa. 195. In considering the testimony offered it must be kept in mind that the grooved rail used on the curve was of proper design and construction, and commonly in use not only in Harrisburg, but over the country at large, and of the character built generally for highway curves, with the approval of the American Standard Committee of Engineers, and designated by them as the "American Standard." It had been laid under the city's direction, and crossed the part of the highway used constantly by pedestrians without injury, —a factor to be considered (Nellis on Street Accident Law, 63, 182),—and no evidence was offered to show that the defendant would have any reason to believe it dangerous. "To hold a railroad liable in damage for improper construction of its appliances, it is necessary to convict it of negligence": McCully v. Monongahela Ry. Co., 289 Pa. 393. "The adoption of an improvement in the public interest does not throw the risk of all incidental damage upon those who adopted it": Southern Pac. Co. v. Berkshire, 254 U. S. 415, 418.

The failure of the conductor to assist the plaintiff in alighting, was not in itself, though charged in the statement of claim to be negligence under the circum-

stances appearing, no request for aid having been made, nor was its necessity apparent: Baron v. Wilkes-Barre Ry. Co., 71 Pa. Superior Ct. 103. It cannot be, nor is it claimed, that the lack of light caused the injury, though the point at which the foot met the street may have been somewhat in shadow from the standing car, notwithstanding the accustomed street lights were burning. If there is any proof from which a jury could infer a failure to exercise proper care, it must be found in its not stopping the car at what certain witnesses called the "usual" place, as a result of which the plaintiff was endangered. In this connection the undisputed physical facts must be considered. Ordinarily, the car was brought to a stand-still at the foot-crossing, but the curve left the South Cameron Street track ten feet before the south house line was reached. If the ordinary stopping place was at the intersection, it is apparent that the car was customarily on the curve when passengers departed.

The plaintiff testified she thought the car had stopped at the usual place. Elizabeth Byram did not know whether or not this was true, but said it was "slightly on the curve." Helen Zinn and Lottie Gross stated only that it was "slightly on the curve," and George Blessing that "it might have been slightly around farther than its usual place—it wasn't farther than the line of the houses in the front." Anna Putt testified that ordinarily when the car stopped "the fender was right where you go across the street," which necessarily located the trolley on the curve. Annie Hoffman said it was not brought at a standstill at the usual place, but marked on the diagram, now before us, the spot where the accident occurred, which was south of the crossing line. This is all of the evidence showing the car was moved to an unaccustomed point, and the witnesses agree it was slightly on the curve when it stopped, which it must have been if, as the exhibits show, this construction began ten feet to the south of the foot crossing. We disregard for pres-

ent purposes the testimony of the witnesses for defendant, showing the car was always stopped on the curve, though a careful analysis of that offered for plaintiff will demonstrate that, in fact, there is no real contradiction of it.

There was nothing to show how many inches or feet it had gone beyond the indefinitely designated "usual" place, nor was there any effort to prove that the point where it stopped was more dangerous, or that the defendant, or its employees, would have reason to believe it so. The plaintiff was not discharged at an obviously perilous point, but alighted onto an ordinary grooved rail, which began where the South Cameron Street track was left, and continued in the same condition along it and into Market Street, where it connected with the line there located. There was no justification for holding that the movement of the car from its usual place of stopping, for a very short distance, at most, increased in the slightest the dangers, or furnished reason to the employees to give further and special attention to those descending from the car. Had the passenger been invited to alight on top of a frog, or dangerous construction, more care might have been required, but here the rail upon which she stepped was of the kind commonly and necessarily employed by all street railway companies in making curves in city highways, and it cannot be said that the adoption of such an appliance, in general use everywhere, indicated lack of proper care. It was legally installed, and from its use there was no reason to anticipate an accident such as here occurred.

Street railway companies do not have fixed stopping places, and cannot be expected to come to a stand with exactness each time at the same point where passengers are discharged (Perret v. George, 286 Pa. 221), differing in this respect from railroad companies, which provide regular platforms for stoppage: Miller v. Lehigh Valley R. R. Co., 290 Pa. 130. As was said in Clogher v. New Orleans R. & L. Co., 78 So. 247, on re-

hearing, p. 248: "Were plaintiff to succeed, the doctrine of the case would have to be that, for a street car company to stop its car either short of, or beyond, the regular stopping place is negligence, unless the footing at the place where the car is stopped happens to be precisely similar to that of the regular stopping place. The practical operation of such a rule would be to necessitate the marking of the space constituting the regular stopping place, and to preclude the stopping elsewhere, unless the car company choose voluntarily to incur the risk of a law suit." It cannot discharge passengers at known dangerous places (Thorne v. P. R. T. Co., 244 Pa. 470; McCollum v. Pittsburgh Rys. Co., 51 Pa. Superior Ct. 637), but it may properly permit them to alight if there is no reason to anticipate harm, though the car has gone beyond the ordinary point: Sligo v. P. R. T. Co., 224 Pa. 135; Conway v. L. & A. Horse R. Co., 90 Me. 199, 38 Atl. 110. The mere stopping at an unusual place does not prove negligence: Mahoney v. P. R. T. Co., 214 Pa. 180.

The track in this case was of approved construction, and there was nothing to indicate it to be faulty, unusual, dangerous, or the cause of injury to others: Gabriel v. Long Island R. R. Co., 66 N. Y. S. 301. There was no evidence to show it was out of repair: Howell v. Union Traction Co., 202 Pa. 338; Stebel v. Conn. Co., 96 Atl. 171. The curve had been laid under the direction and supervision of the city, and had become a part of the city street, freely traveled over, and was in the same condition where pedestrians traversed it: Conway v. L. & A. Horse Ry. Co., supra; Farrington v. Boston St. Ry. Co., 202 Mass. 315, 88 N. E. 578; Miller v. United R. & E. Co., 108 Md. 84, 69 Atl. 636. The grooved tracks were a proper installation for making a curved track, and were not inherently dangerous, so that defendant might with reason anticipate the injury which happened.

The exhibits in the present case clearly demonstrate that the car stopped slightly on the curve at practically the same place as always, and at a point at which danger was no more to be expected than at any other place along the properly constructed curved tracks from ten feet south on Cameron Street to the connecting point on Market. There was no negligence in the placing of a grooved rail, and the fact that the shoe of plaintiff caught therein is no more than an unfortunate accident, such as appears in Howell v. Union Traction Co., supra, where the heel of the plaintiff caught in the step of the car as he alighted. The street railway company, in the construction of its cars and appliances, was bound to guard against dangers that are probably and reasonably to be apprehended, but not against such as are remote, and not to be foreseen: Keller v. Ry. Co., supra.

Viewing the evidence in the light most favorable to the plaintiff, we are constrained to hold that no negligence was proven in this case, and the plaintiff is not, therefore, entitled to recover.

The judgment is reversed, and here entered for defendant.