Lackawanna Mills, Appellant, *v.* Scranton Gas & Water Co.

Scranton Button Co., Appellant, *v.* Scranton Gas & Water Co.

Argued March 18, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Thomas F. Gain,* with him *Frank P. Benjamin, M. J. Martin* and *Francis Shunk Brown,* for appellants.—The making of the agreement of April 17, 1888, was a clear recognition by defendant of the right of Connell & Co. to a water supply from Stafford Meadow Brook: Garvin & Co., Inc., v. Lancaster Co., 290 Pa. 448.

Defendant having recognized the rights of Connell & Co. to the water of the brook, by making the agreement of 1888, and the dealing between the parties having continued on the basis of that agreement for thirty-three years, it cannot now be heard to challenge the title of Connell & Co., or its successors: Donnelly v. R. R., 268 Pa. 345; Reading v. Althouse, 93 Pa. 400; Bryant v. Water Co., 190 Pa. 366; Palmer Water Co. v. Water Supply Co., 280 Pa. 492.

While the Public Service Company Law may enable defendant to refuse compliance with an agreement in so

far as it involves a service for other than established uniform rates, it does not enable defendant to avoid making compensation for property acquired under the agreement, or for rights therein recognized: Suburban Water Co. v. Boro., 268 Pa. 243; Leiper v. R. R., 262 Pa. 328; Ortega Co. v. Triay, 260 U. S. 103; Semple v. R. R., 172 Pa. 369.

*William Watson Smith,* of *Smith, Buchanan, Scott & Gordon,* with him *Henry A. Knapp, John P. Kelly* and *Paul G. Rodewald,* for appellee.—The finding that plaintiffs had at the time of condemnation no compensable rights in the water of Stafford Meadow Brook is supported by sufficient evidence: Palmer Water Co. v. Water Supply Co., 280 Pa. 492.

Plaintiffs are not entitled to compensation for the taking of water in which they had in fact no property right, on the ground that defendant is estopped or otherwise disqualified to deny their title to such right: Messinger's App., 109 Pa. 285; Reading v. Althouse, 93 Pa. 400; Horn v. Miller, 142 Pa. 557; Delp v. Brewing Co., 123 Pa. 42; Phila. & Reading Ry. v. R. R., 2 Pa. Dist. R. 857; Com. v. Moltz, 10 Pa. 527; Hill v. Epley, 31 Pa. 331; Enterprise T. Co. v. Oil Co., 20 Pa. Superior Ct. 127.

Plaintiffs are not entitled to compensation for any real or imagined consideration or advantage given up by William Connell & Co. in reliance on the contract: Central T. Co. v. Car Co., 139 U. S. 24; L. & N. R. R. v. Mottley, 219 U. S. 467; Donahue v. Boro., 298 Pa. 77; Reese v. Comrs., 276 Pa. 253; Ortega v. Triay, 260 U. S. 103; Semple v. R. R., 172 Pa. 369.

OPINION BY MR. JUSTICE SCHAFFER, May 12, 1930:

These two cases were tried together in the court below and were so argued here. The same facts apply to each of them and the same questions are raised in both. They will be disposed of in a single opinion.

The vital question is whether the plaintiff corporations have any property rights in the waters of Stafford Meadow Brook which entitle them to recover damages from defendant because of its appropriation and condemnation of all the water in the stream. The trial court, sitting without a jury, held that they had no property right in the water and entered judgments for defendant, from which plaintiffs appeal.

William Connell & Company prior to 1888 were the owners of three tracts of land in the City of Scranton, one containing 357 acres, through which Stafford Meadow Brook flowed and in the waters of which the owners of the land had riparian rights; the second, a plot of land known as Block No. 4, which was separated from the brook by a public street, Brook Street, and by a strip of land owned by other parties, and, which had no riparian rights in the waters of the brook. Upon this plot Connell & Company constructed the factories now owned by the plaintiffs. The third piece of land which Connell & Company owned was higher up the brook, in which it also had riparian rights and upon this property they maintained a pumping station, which pumped water from the brook to certain mines and collieries which they owned, none of them, however, located on Block No. 4. Both the factories on Block 4 used large quantities of water which Connell & Company obtained from the brook by means of a pump and pipe line which ran from a point in the brook opposite the factories and across Brook Street and land of an intervening owner by his acquiescence.

On April 17, 1888, defendant, which was about to erect a dam on the brook above the Connell lands for the purpose of impounding the water, and Connell & Company entered into an agreement in writing, in which the water company stipulated that it "will let down or cause to be let down, through the channel of Stafford Meadow Brook, sufficient water to supply what works and collieries and business operations are now run and oper-

ated by said parties of the second part [William Connell & Company], or may be so run and operated by them for the purpose of raising and preparing all coal in land now owned or leased by them, and also to supply all factories now or hereafter to be erected upon land in the City of Scranton known as Block No. 4......until such time as water works erected by any corporation now or hereafter to be incorporated under the law of the State of Pennsylvania may be in successful operation from the water of said brook: Provided, there shall be sufficient water for such purposes in the whole flow of said brook. And the said party of the first part does also further covenant and agree with the said parties of the second part and their heirs, executors, administrators and assigns, that within three years from this date they will furnish and supply, or cause to be furnished and supplied, through pipes, unto the said parties of the second part, their heirs, executors, administrators and assigns, at the reservoir of the said parties of the second part above their office as now located, sufficient water in suitable quality to supply the said works, collieries and business operations of the said parties of the second part as above described. And also within the same time to fully supply all factories now or hereafter to be erected upon said Block No. 4 with a like suitable quantity of water through the pipes now or hereafter to be laid by the said party of the first part, their successors or assigns. And the said parties of the second part, for themselves, their heirs, executors, administrators and assigns, covenant and agree to and with the said party of the first part, their successors and assigns, to pay them for the furnishing, the sum of $1,000 in each and every year, from and after the time when the supplying of such waters shall commence, payable in equal monthly payments on the 10th day of each month, such payments to commence when said party of the first part begins to supply the water through pipes to all said collieries and factories. It is, however, agreed that if said parties of

the second part desire the factories now on said Block No. 4 supplied with water through present connections before the party of the first part is prepared to furnish water to the works and collieries of said parties of the second part, the same shall be so supplied at the rate of $300 per annum payable monthly. And the said parties of the second part, for themselves, their heirs, executors, administrators and assigns, covenant and agree to make at all times such economical use of the water so supplied and furnished as is consistent with the proper transaction of their business as aforesaid." The covenant further provided that the defendant should have a right of way over the land of Connell & Company for the purpose of laying its pipes for the delivery of water from its reservoir.

The dam erected by the defendant was completed in 1889 and put in service in 1890. From the month of June, 1888, Connell & Company paid the defendant the sum of $1,000 per annum provided for in the agreements and they and the plaintiffs, as their successors in title to the factories on Block No. 4, and as assignees of the contract, continued without interruption to receive water from the defendant down to September, 1921. Plaintiff, Lackawanna Mills, obtained title to its property by various deeds between the years 1887 and 1893 and Scranton Button Company between the years 1885 and 1900. The assignment of the contract to plaintiffs by Connell & Company was on February 3, 1907.

The use of the water by plaintiffs has greatly increased since the signing of the contract, so that by 1921, when defendant condemned the entire water of the brook, the amount consumed at defendant's schedule rates cost over $15,000 a year. On July 21, 1921, defendant having been advised by counsel that it was an illegal discrimination for it to continue to supply water to plaintiffs at the contract rate, notified them that on and after September 1st, the water would have to be paid for at the rates filed with the public service commission. Follow-

ing this notice, plaintiffs, asserting a property right in the water, presented a petition to the court of common pleas, asking for the appointment of viewers to assess the damages sustained by them by reason of the taking of the waters of the brook. To this petition an answer was filed and a demurrer. On the theory that plaintiffs had no ownership in the water the court dismissed the proceeding. On appeal (Lackawanna Mills v. Scranton Gas & Water Co., 277 Pa. 181), we determined that as the petition distinctly set forth a claim of ownership in the water appropriated viewers should be appointed; that whether the averment of ownership in the water was justified was a matter not requiring consideration at that stage of the proceeding,—that it would be a question preliminarily for the determination of the viewers, subject to review by the common pleas. We said (page 184) : "Without expressing any opinion as to the right of the present appellants to ultimately recover, we are convinced that, in view of the pleadings, their prayer should have been granted and viewers appointed." Viewers were subsequently appointed and it was on an appeal from their findings in plaintiff's favor that the court below determined the proceeding and entered judgment for defendants on the ground that they had no property right in the stream.

The land on which plaintiffs' properties were erected, not being riparian to the brook, they can assert no title to its water, merely because they or their predecessors, Connell & Company, had been accustomed to receive it, due to the fact that, through the ownership of their other lands, Connell & Company were riparian owners: Palmer Water Co. v. Lehighton Water Supply Co., 280 Pa. 492. As was said by Mr. Justice KEPHART, delivering the opinion in that case (page 499) : "Since very early in the Commonwealth's history, we held that water, as it flows in the various water courses, is not the subject of absolute ownership except by designated methods. Every riparian owner is entitled to use so

much of a stream running by or through his lands as may be necessary for domestic needs or other similar purposes. The use for extraordinary purposes must be such as will not sensibly or materially diminish the quantity." We do not understand that plaintiffs make any claim to a property right in the water as riparian owners; the rights which they assert are under the agreement of April 17, 1888. They contend that the making of the agreement was a clear recognition by the defendant of the right of Connell & Company to a water supply from Stafford Meadow Brook for Block No. 4 and that the defendant, having recognized the rights of Connell & Company to the water by making the agreement, and the dealing between the parties having continued on the basis of that agreement for a period of thirty-three years, cannot now be heard to challenge the title of Connell & Company or its successors, the plaintiffs, to the water. Appellants in their printed brief say: "The ultimate and decisive question in the case is whether the plaintiffs had a property right in the waters of Stafford Meadow Brook at the time of the condemnation, August, 1921. The answer to that question depends upon the legal effect to be ascribed to the agreement of 1888 between the defendant and William Connell & Company in the light of the circumstances surrounding the parties when they made it and their course of dealing under it for thirty-three years." They contend that the making of the agreement must be considered a clear and unequivocal recognition by the defendant of the right of Connell & Company to appropriate the water of the brook for all the purposes for which they were then using it, including the nonriparian use thereof for their factories on Block No. 4. We cannot so construe the agreement nor do we think that anything in it or in the conduct of the parties could work an estoppel, as appellants argue, so far as the defendant is concerned, even if title to the water could be based on estoppel, which we very much doubt in view of the rights of the other riparian

owners and of the fact that neither appellants nor William Connell & Company so far as Block No. 4 was concerned had or could acquire any property rights in the waters of the stream. This question it is not necessary to determine.

We think it plain under the language of the agreement that neither William Connell & Company nor plaintiffs were recognized to have any property right in the waters of the brook. The defendant water company had acquired rights in the stream above the lands of Connell & Company and was proceeding with the erection of a dam to impound the flow. While at that time it took no steps to condemn the water so far as Connell & Company were concerned, yet in the agreement the latter recognized the potential rights of the water company in the waters of the stream and stipulated that during the construction of the dam sufficient water should be let down to supply their needs and that within three years, instead of Connell & Company taking the waters themselves out of the brook, the defendant was to "furnish and supply or cause to be furnished and supplied through pipes unto the said parties of the second part sufficient water to supply all factories now or hereafter to be erected upon said Block No. 4, with a suitable quantity of water through the pipes now or hereafter to be laid by the said party of the first part," for which Connell & Company were to pay the water company the flat rate of $1,000 a year. In other words, under the agreement, Connell & Company, far from establishing a clear declaration of their alleged proprietary interest, contracted for a sale of water to themselves; they became customers of the water company, and so far as the plaintiffs themselves are concerned as successors to Connell & Company, they never had any rights under the agreement except the right to receive water from the water company for the flat rate fixed, and their rights to this special rate ceased when it became discriminatory as to other patrons of the water company; this appel-

lants in effect concede. Defendant had other and larger sources of water for its patrons than Stafford Meadow Brook. It was only one of the streams from which it drew. The supply of water which defendant was to furnish under the agreement was not limited to that which is obtained from Stafford Meadow Brook, but was to come from its general supply without regard to source. As the plaintiffs had no property rights in the water under the agreement, the court below properly decided that they were not entitled to damages.

The judgment is affirmed.