## Brown, Appellant, v. Ambridge Yellow Cab Company.

Argued March 24, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ. Appeal, No. 196,

*A. G. Helbling,* with him *James B. Ceris,* for appellants.

*Oran W. Panner,* with him *Thompson Bradshaw* and *Bradshaw & Panner,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 28, 1953:

On the morning of January 1, 1950, at about 2 o'clock, the plaintiffs, Mildred Brown and Joseph Orler, entered a taxicab outside the Maennerchor Hall in northern Ambridge, and instructed the driver to take them to the Workingmen's Beneficial Union Building, situated on the eastern side of Merchant Street near the middle of the block, between 3rd and 4th streets, toward the southern end of Ambridge. The driver, instead of approaching the indicated address on the east side of the street so that the cab could stop immediately in front of the building, (and the passengers could thus be discharged from the right side of the vehicle,) advanced along Merchant Street on the west side. It came to a stop at a point across the street from the Workingmen's Building, which necessitated the passengers' alighting from the left side of the cab and into the middle of the roadway. Immediately after descending from the cab the plaintiffs were struck and injured by an automobile coming north on Merchant Street. The plaintiffs brought a suit in trespass against the Ambridge Yellow Cab Company, which, in turn, brought in the owner of the intervening automobile, John Kochanowski, as additional defendant. At the ensuing trial the jury returned a verdict exonerating John Kochanowski, and found in favor of the plaintiffs ($8,-000 to Mildred Brown and $164.80 to Joseph Orler) against the Ambridge Yellow Cab Company. The jury also made special findings in the form of answers to 17 questions submitted to them.

The defendant cab company moved for judgment n.o.v., which was granted by the court below, and an appeal followed to this Court.

We will consider first whether the general verdict was supported by the evidence and then whether the special findings, which, in part, were inconsistent with the general verdict, were controlling over the general verdict.

It is, of course, an established rule that where a plaintiff obtains a verdict, "we are required to view the evidence in a light most favorable to him, resolving any conflicts in the testimony in his favor and according him the benefit of every inference of fact reasonably deducible therefrom." (*Brizzi v. Pianetti,* 165 Pa. Superior Ct. 258, 260, and cases there cited.)

This rule is but another way of saying that judgment n.o.v. cannot be entered except in such cases where the evidence required the court to grant binding instructions against the plaintiff.

In view of the fact that the testimony of the plaintiffs, if believed, made out a clear case of negligence against the defendant, and did not per se convict them of contributory negligence, the Trial Court would not have been warranted in ordering the jury to return a verdict for the defendant.

The driver of the taxicab involved in this accident engaged himself to transport the plaintiff-passengers to the Workingmen's Building and release them at a reasonably safe place for them to enter that building. He did not acquit himself of that obligation when he stopped on the other side of the street from the passengers' destination and discharged them from the wrong side of the cab into the street, potentially moving with traffic. Even if the plaintiffs had wanted to alight from the right of the cab, they could not have done so because of parked cars on that side of the

street. The cab driver, on coming to a halt, said: "Here you are; you get out here," and opened the left door of the cab. The passengers had no choice but to leave at that time and place.

Had the driver come up on the correct easterly side of Merchant Street, he could have stopped in juxtaposition to the curb because no cars were parked at this point. Failing to do this there can be no doubt that the driver failed to shepherd his passengers with the care required by Pennsylvania law: "A common carrier for hire owes to its passengers the highest degree of care and diligence in carrying them to their destination and [in] enabling them to alight safely (Hughes v. Pittsburgh Transportation Co., 300 Pa. 55) and to avoid any possible danger while doing so: Lyons v. Pitts. Rys. Co., 301 Pa. 499. It is the duty of a carrier of passengers to set them down at the terminus of their journey, and to afford them a sufficient time to alight in safety." (O'Malley v. Laurel Line Bus Co., 311 Pa. 251, 254.)

In the O'Malley case the plaintiff had instructed the driver of the motor bus, on which he was a passenger, to let him off at a certain street corner and the driver acknowledged he would so do. However, the driver carried the plaintiff beyond his designated terminus, and then stopped in the center of the street sixteen feet from the curb. As occurred in the case at bar, the plaintiff, upon alighting from the bus, was immediately struck by an automobile. There, as here, the defendant contended that the automobile which struck the plaintiff, was responsible for the accident. This Court rejected that contention by saying: "In Burrell Twp. v. Uncapher, 117 Pa. 353, 363, we said: 'If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but

for such negligence the injury would not have happened, *and both circumstances are closely connected with the injury in the order of events,* the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.' "

In view of the vehicular barrier on the west side of the street and the opening of the door by the driver, the passengers could not be charged with contributory negligence in alighting where they did. Mildred Brown testified that before getting out of the taxicab she "looked out of the window. I didn't see any car coming: so, I got out." It was apparent that the car had not yet appeared when Mrs. Brown looked, but as she was closing the cab door, it came upon the scene. Mrs. Brown testified: "Well, I—just as I looked up something hit me: that's all I know."

The plaintiff Orler testified that after paying the fare and the driver opened the left door, he stepped out and then helped Mildred Brown from the cab. As he did this, he looked up the street. "Well, I—just as I looked up something hit me: that's all I know."

Taking the evidence in the light most favorable to the plaintiffs, as we are required to do, the record does not reveal that Brown and Orler conducted themselves in a manner which would require the Court to declare as a matter of law that they were guilty of contributory negligence.

Had it not been for the special findings of the jury the lower court would probably not have entered the judgment against the verdict. In any event this Court, in the state of the record, could not upon any possible appeal, have approved a judgment n.o.v. The question now arises as to whether the reversal of the general verdict can be justified because of the special findings of the jury.

Before leaving the jury box for their deliberations, the jury received a list of 17 questions to answer. Assuming that special findings may in certain cases be desirable, it is not certain that so large a number of questions may not confuse rather than simplify the issue presented to the jury for decision. It is obvious that the jury here did not understand or heed all the questions. For instance, Question 3 reads: "Were Mildred Brown and Joseph Orler struck on the westerly half or the easterly half of Merchant Street, bearing in mind that the easterly half is the half adjoining the Workmen's Beneficial Union, and that the car tracks were in the exact center of the highway?" The jury's answer was: "Yes."

Many of the questions were worded in such a way as to make the answers meaningless and therefore valueless. Question No. 12 reads: "At the moment of being struck, were Joseph Orler and Mildred Brown within a foot of each other?" The jury answered "No." It is obvious that this answer carries no probative weight at all. Does it mean that not being within one foot of each other, Mildred Brown and Mr. Orler must have been within 10 feet of each other, or 20 feet, or not together at all?

Question No. 13 reads: "Did the Kochanowski car carry Mildred Brown on its right fender approximately ten feet?" The jury answered, "No." Would 15 feet have still been approximately 10 feet? Does this answer convey any idea as to whether the Kochanowski car carried Mrs. Brown at all? Furthermore, the car might have carried Mrs. Brown on the *left* fender instead of the right fender, but the answer would not have divulged that fact.

Question No. 4: "If you find that Mildred Brown and Joseph Orler attempted to cross Merchant Street before they were struck, did either or both of them look

to determine whether or not they could cross Merchant Street with safety?" The answer was, "No." Does this mean that Mildred Brown *and* Joseph Orler did not look; or that Mildred Brown did not look and Joseph Orler did; or that Joseph Orler did not look and Mildred Brown did?

Question 6: "If Joseph Orler, when about to help Mildred Brown to alight, had looked south toward Leetsdale, could he have seen the Kochanowski car approach?" The jury answered: "If the Kochanowski car was then in view. Yes." This answer is entirely inconclusive because the jury does not know if the Kochanowski car was in view or not, and certainly cannot charge an affirmative responsibility based on an unacknowledged and unknown fact.

Question No. 7 asks: "If, as Mildred Brown was about to step out of the cab into the cartway, she had looked south toward Leetsdale, could she have seen the Kochanowski car approach?" The answer here is the same as the answer to Question No. 6, and the doubts produced by that answer are raised here also.

Question No. 10 asks: "Did the Kochanowski car strike Mildred Brown in the region of its right front fender?" The answer is "Yes," but the fault of this question lies in the fact that it allowed the jury no latitude in answering. Suppose the jury had found that the Kochanowski car did strike Mildred Brown but not in the region of its right front fender. The question called for a categorical yes or no, and thus denied the jury the opportunity to be specific.

Question No. 11 asked if the Kochanowski car struck Orler in the region of its left front fender. This, like the preceding question, is strictly a leading question and should not be asked of the jury any more than it may be asked of a witness on the stand.

Many of the other questions were also leading, and misleading as well.

It seems that the lower court was mostly convinced that the plaintiffs were guilty of contributory negligence because the jury answered: "Miss Brown and Mr. Orler were walking across the street when struck" to the question: "Were Mildred Brown and Joseph Orler walking across Merchant street or were they standing still at the time they were so struck?"

This question, however, did not take in all the possibilities of the situation. The jury was not given the opportunity here to answer that the plaintiffs were struck while turning from the cab to face around to the open street, which factual proposition was distinctly in the evidence. "Walking across the street" conveys the idea that one in full stride is traversing a thoroughfare, but the evidence indicates that the collision occurred in the middle of the street. The jury may have believed that the plaintiffs had taken one step or were about to take a step when they were struck. This fractional movement would have had to fall in the category of "walking across the street," because it would be excluded from "standing still." Thus, this finding does not give an accurate account of what the jury really found as to the movements of the plaintiffs at the time of the accident.

After considering all the evidence as a moving picture rather than as an accumulation of still photographs, the jury decided that the defendant was guilty of negligence and the plaintiffs were innocent of contributory negligence. If we are to assume that the jury completely misunderstood the Trial Judge's charge, how can we exclude the possibility that they misunderstood as well the special questions—at any rate, some of them?

Special findings have their use where the case involves a number of different parties, standing in different relation to the matter in issue, e.g., where there are an original defendant and additional defendant or defendants: see Rule 2257, Pennsylvania Rules of Civil Procedure. There can also be an element of helpfulness in special findings where the conflict on a material issue of fact is absolute and categorical, such as whether a thing is white or black, but once the issue slips into distinctions between the grays and the tints, between twilight and dusk or daybreak and dawn, shades of variance appear where requests for special findings will produce confusion rather than clarity, doubt rather than certainty, inconclusiveness rather than finality.

The decision of the jury was the *general verdict,* not the answers to the 17 questions. Taking the answers as a whole one cannot say that they represent a mathematical exactness and factual certainty of such impeccability as to overturn the deliberate and solemn conclusion reached in the general verdict. It would appear that the jury, after due deliberations, reached its conclusions and then perfunctorily and hurriedly attempted to answer the voluminous interrogatories. Logic does not require, and there is no law which compels acceptance of the special findings here, shot through as they are with inconsistencies, vagueness and inconclusiveness, as against the general verdict, which with authority and definitiveness declares: "And now, to wit, Nov. 16, 1951, at 11:15 P.M. we, the Jurors empaneled in the above entitled case, find for the Plaintiff in the case of Mildred Brown v. Ambridge Yellow Cab Co. in the amount of $8000.00. The plaintiff to pay her own hospital, medical and dental bills.— Also we find for the plaintiff in the case of Joseph Orler vs. The Ambridge Yellow Cab Co. in the amount

of his doctor bill and for loss of wages $164.80. Also we find for the defendant John Kochanowski in that he was guilty of no negligence.

W. P. Elliott, Foreman."

In the case of *Greiner v. Commonwealth,* 334 Pa. 299, 301, this Court said, in affirming a verdict, which had been accompanied by special findings in answer to two questions: "The jury rendered a general verdict for the plaintiff so that the assignments complaining that the learned court below 'approved' the special findings are of no consequence because, while advisory, they were not controlling, *the important thing was the general verdict."* (Emphasis supplied.)

Appellee's counsel cited several cases in support of the special findings procedure, but in none of them was the situation analogous to the one at bar. In *Schwab v. Continental-Equitable Title and Trust Co.,* 330 Pa. 540, the Court put to the jury two questions which in substance asked "whether the terms of the oral agreement were as claimed by the plaintiff or as claimed by the defendant." In *Benzinger v. Prud. Ins. Co.,* 317 Pa. 561, the Court asked the jury one question. Upon returning with the answer the Court suspected the jury had misunderstood the question and put it again, whereupon in open court the jury reversed its previous answer, so that in effect the jury arrived at a verdict in open court. In *Harrison v. Metropolitan Ins. Co.,* 168 Pa. Superior Ct. 474, the Court asked one specific question and it was: "On what date was Tom Harrison born?"

We have found no case, nor has counsel referred us to any, where the jury was catechized in detail (almost in the nature of cross examination) on 17 different phases of a single transaction.

A just verdict is not the arithmetical addition of the parts of the testimony. It is the amalgam of all the

evidence considered together. No matter how the picture of this accident may be cut up into individual pieces, and each piece separately analyzed, when the fragments are assembled again the fact remains that two passengers who contracted with a common carrier for pay, to be taken to a precise destination, were taken elsewhere and then gratuitously thrown into a situation of peril. The jury realized this—and wisely, justly and properly returned a verdict which would compensate the passengers for this reckless invasion of their rights. The 17 scattered pieces of the testimonial picture do not, individually or collectively, change the jury's fundamental conclusion.

In its opinion, the lower court emphasized the law with regard to pedestrians crossing the street between intersections, but the cases there cited apply to pedestrians who *voluntarily* choose a spot between intersections to get to the other side. The situation here was totally different. The plaintiffs were not pedestrians, but taxicab passengers who were discharged in the middle of a busy thoroughfare against their will. Furthermore, insofar as the plaintiffs' evidence is concerned, and we must accept it in the light most favorable to them since they gained the verdict, there was no crossing of the street but only the resolution to attempt the crossing. The plaintiffs were struck before they had actually committed themselves to the traversing process.

In view of the inconsistency between the general verdict and the special findings, the case will go back for another trial, which will not, considering the nature of the happening involved in the litigation, require any special findings.

Judgment reversed with a venire facias de novo.