## Harris, Appellant, *v.* DeFelice.

470

Argued October 7, 1954. Before STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*James C. Evans,* with him *Evans, Ivory & Evans,* for plaintiff, appellant.

*Con F. McGregor,* for defendant, appellee.

*Kim Darragh,* for defendant, appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 15, 1954:

This action in trespass was instituted by the plaintiff, Eugene N. Harris, to recover damages for injuries suffered by him when struck by defendant Attilo De-Felice's automobile after alighting from the defendant Pittsburgh Railways Company's street car. During the course of the trial a compulsory nonsuit was entered in favor of the corporate defendant. The jury failed to agree upon a verdict as to the individual defendant and was discharged. Following their discharge the plaintiff filed a motion to take off the judgment of compulsory nonsuit and the individual defendant filed a motion for judgment in his favor upon the whole record, pursuant to the Act of April 20, 1911, P. L. 70, 12 PS §684. After argument the court en banc refused plaintiff's motion and granted the individual defendant's motion. From the judgments thereupon entered, plaintiff appeals.

In reviewing the record we will consider the facts and the reasonable inferences therefrom in a light most favorable to the plaintiff as we are required to do: *Jones v. Carney,* 375 Pa. 32, 99 A. 2d 462. Thus viewed, the following factual situation is presented.

On November 17, 1949, at about two A.M. the plaintiff was a passenger on the corporate defendant's street car which was proceeding in an easterly direction on Freeport Road in the Borough of Sharpsburg, Allegheny County, Pennsylvania. The night was dark

and hazy and a light rain was falling. Plaintiff informed the operator of the street car that he wanted to go to the Dixie Drive Inn. Plaintiff was discharged directly across the street from the inn on the southerly side of the highway, which admittedly was not a regular car stop. At this particular point the highway is about 50 feet wide and runs generally east and west. The defendant transportation company maintains a single track generally in this area, but at the place where plaintiff was put down there is, for a short distance, a double track, allowing street cars operating in different directions to pass each other. Freeport Road is bordered on the south by a retaining wall owned by the Pennsylvania Railroad Company. There is an elevated space running along the base of this wall, between it and the curb of the highway sufficient in width to permit a person to stand thereon.

After alighting from the street car, the plaintiff stood on this space and waited until the car started again before entering the cartway. After the street car moved forward he then proceeded to cross the street. When plaintiff reached the middle of the road, he hesitated or stopped for a second, looked to his right, and having observed no traffic approaching from that direction, he walked on. After he was a couple of steps beyond the middle of the highway he saw the headlights of the individual defendant's automobile which was approaching from the right, according to plaintiff's estimate, 160 or 170 feet away. Plaintiff continued across the highway, testifying that he was about three-fourths of the way across, when he was struck by the defendant's automobile and hurled a distance of from 25 to 30 feet, suffering a fracture of his right leg, his right wrist and one rib, together with abrasions and contusions. The automobile of the defendant was damaged on the left side of the hood and front grille.

Considering first the liability of the defendant carrier, the applicable law is clear. A common carrier owes a duty to its passengers not only to exercise a high degree of care and diligence in transporting them to their destination but also in affording them a reasonable opportunity to alight and pass out of danger: *O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251, 254, 166 A. 868; *Brown v. Beaver Valley Motor Coach Company et al.*, 365 Pa. 578, 581, 76 A. 2d 403; *Brown v. Ambridge Yellow Cab Company*, 374 Pa. 208, 97 A. 2d 377. The mere fact that a street car discharges its passengers at an unusual stop does not in itself prove negligence: *Hoffman v. Philadelphia Transportation Co.*, 369 Pa. 212, 215, 85 A. 2d 144; *Low v. Harrisburg Railways Co.*, 290 Pa. 365, 371, 138 A. 852. It is only when a passenger is mistakenly led to alight at a manifestly dangerous place which is not the usual stopping place that a carrier may be held liable for any injuries sustained by the passenger: See *Carroll v. Pittsburgh*, 368 Pa. 436, 440, 84 A. 2d 505.

The controlling question, therefore, is whether the defendant traction company discharged the plaintiff at a manifestly dangerous place. It is the plaintiff's position that the place of discharge was obviously perilous because there was no place to stand in safety on the southerly side of the street. The only evidence before the jury concerning the safety of the space beyond the curb on that side of the street was plaintiff's statement that "If I stayed where I was, a car might have come down the other way and hit me, because there was nothing there but a little curb." The only evidence regarding the size of the space between the retaining wall and the curb was testimony by one of plaintiff's witnesses, Frank A. Cefola, to the effect that just about one person could stand there.

Under the testimony it is difficult to conceive how liability could be imposed on the defendant corporation. The plaintiff himself had stood on this space at the foot of the retaining wall for an interval before committing himself to the cartway. Even apart from witness Cefola's testimony, the exhibits demonstrate that plaintiff's statement that he might have been hit was a conclusion on his part, unsubstantiated by the physical facts and purely a matter of conjecture. The only conceivable way that plaintiff would be endangered if he remained where he was standing would be the wholly fortuitous circumstance of an automobile leaving the highway at that point.

Most of the cases relied upon by the plaintiff are factually dissimilar from the instant one in that the dangerous conditions giving rise to liability were due to the presence of mounds of earth, an excavation, a pile of building stones or other extraordinarily hazardous conditions.[1] O'Malley v. Laurel Line Bus Co., supra, the case principally relied upon by the plaintiff, is clearly inapposite. In that case a motorman on a dark, stormy night discharged a passenger at a place other than the regular bus stop, in the middle of the street, 16 feet from the curb. The plaintiff was struck by an automobile immediately after he stepped from the bus. Since the passenger had no opportunity to reach a point of safety, the facts supported a finding of negligence. In the instant case the defendant carrier did all that it was required to do under the law since the plaintiff was afforded and did reach a position of safety. That he subsequently, of his own accord,

---

[1] See: *Brown v. Beaver Valley Motor Coach Company et al.*, supra; *Scherer v. Philadelphia Rapid Transit Co. et al.*, 295 Pa. 199; *McCollum v. Pittsburgh Railways Company (No. 1)*, 51 Pa. Superior Ct. 637.

abandoned that site for one more perilous would not stamp the entire area as a manifestly dangerous place under the decisions of this Court. There being no evidence of any actionable negligence by the defendant carrier, a nonsuit was proper.

Turning next to the question of granting the individual defendant's motion for judgment on the whole record, our only inquiry is whether the record discloses a case in which binding instructions should have been given for the defendant. Where the evidence presents a factual issue properly submissible to the jury, judgment on the whole record cannot be entered under the Act of 1911: *Grande v. Wooleyhan Transport Co.*, 353 Pa. 535, 46 A. 2d 241; *Shapiro v. Philadelphia Electric Company*, 342 Pa. 416, 21 A. 2d 26. After a careful scrutiny of the record we are of the opinion that irrespective of the question of defendant's negligence, the testimony of the plaintiff establishes such negligence on his part that the court was bound to declare it as a matter of law. A pedestrian who traverses a street between intersections is required to exercise a higher degree of care for his own safety, while motorists are correspondingly held to a lesser degree of care and are not obliged to have their vehicles under instant control: *Rucheski v. Wisswesser et al.*, 355 Pa. 400, 50 A. 2d 291; *Ebersole v. Beistline*, 368 Pa. 12, 82 A. 2d 11. The plaintiff admits that he was crossing between intersections but contends that this would not convict him of negligence as a matter of law. That this is a correct statement of the law can hardly be denied at this late date, but it is equally well settled that if a pedestrian voluntarily walks into the path of an oncoming vehicle when it is dangerously near, he is barred by his negligence from any recovery: *Danks v. Pittsburgh Railways Company*, 328

Pa. 356, 195 A. 16; *Watson v. Lit Brothers,* 288 Pa. 175, 135 A. 631.

Plaintiff's own testimony leads to the inevitable conclusion that he saw the defendant's automobile approaching and nevertheless proceeded rashly in disregard of an obvious and imminent danger. Illustrative in this regard are the following excerpts from plaintiff's testimony: "A. No, I didn't see it then [when he was in the middle of the street]. I took a couple of steps and seen it and thought I might as well keep going the way I was going. I thought I had a chance... I was just about in the center of the rails when I seen the headlights coming the other way. I saw the car come and I thought I could make it and I kept on going... A. No sense me starting back the other way. I thought I had a chance to make it across. I didn't think he was coming fast[2] and I started across. Q. How did you start, continue to walk? A. Walked faster. Q. Did you at any time run? A. I tried to run. I got excited. Everybody would try that... Q. Do I understand you, Mr. Harris, that when you saw this car coming you decided to take a chance to get across in front of it? A. That's right... Q. Is it a fair statement, Mr. Harris, when you say it all happened so fast, that you came from behind the street car and after you got a couple of steps past the center of the street you saw the car, decided to take a chance to get in front of it and the accident happened, is that right? A. That is right.". Plaintiff's own conduct convicts him of contributory negligence for by gambling on the risk of injury he voluntarily placed himself in a position of peril.

Judgments affirmed.

---

[2] In this connection, the plaintiff also testified that he was ". . . no judge of speed at all.".

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A passenger who asks a street car motorman to let him off at a certain bridge does not expect the motorman to stop the car in the middle of the bridge. Another passenger who would request a motorman to take him to the Grant Building in Pittsburgh would certainly be surprised if the motorman climbed the curbstone with his car or bus, crossed the sidewalk and drove directly to the building's entrance. Street cars have regular stops and no matter what may be the car rider's request, the custodian of the car has no authority in law or by the nature of his employment to discharge the occupants of the car at a spot which traffic conditions make dangerous. Although Eugene N. Harris, the plaintiff, indicated he wished to go to the Dixie Inn, he had reason to assume that either that place was a regular and protected car stop or that the motorman would stop at a point where it was safe for him to alight. The motorman, however, stopped directly (across the street) in front of the Dixie Drive Inn which is located between car stops. There was no sidewalk at the point where the plaintiff was required to alight. This Court has held numerously that " 'a common carrier for hire owes to its passengers the highest degree of care and diligence in carrying them to their destination and [in] enabling them to alight safely' (Hughes v. Pittsburgh Transportation Co., 300 Pa. 55) and to avoid any possible danger while doing so." (O'Malley v. Laurel Line Bus Co., 300 Pa. 311, 251, 254.) In the case of Brown v. Beaver Valley Motor Coach Co., 365 Pa. 578, 581, we held also: "While it is true that common carriers are not liable for injuries resulting from *ordinary* defects in the street. . . they must exercise reasonable diligence to give passengers a safe place to alight and pass out of danger."

At the time the passenger alighted, the conditions of visibility left much to be desired. It was 2 o'clock in the morning, the night was dark and misty, rain was falling. Whether the plaintiff was guilty of contributory negligence by stepping out into an atmosphere and environment in which dangers could have lurked was a question for the jury, not the court.

After the street car left, there was only one thing for the plaintiff to do and that was to cross the street. The Majority Opinion says that if the plaintiff had remained where he alighted he could not have been injured: "The only conceivable way that plaintiff would be endangered if he remained where he was standing would be the wholly fortuitous circumstance of an automobile leaving the highway at that point. . . That he subsequently, of his own accord, abandoned that site for one more perilous would not stamp the entire area as a manifestly dangerous place under the decisions of this Court."

With all due respect, I must say that this reasoning on the part of the Majority is very strange indeed. The plaintiff could not remain at the alighting spot forever. He had to leave some time. The curb on which he stood was "just about the width of one person" standing up. He could not sleep there. He could not live there. There were no restaurant facilities there. He was on a bare ledge no more than a foot wide. To argue that he was at fault in leaving this strip of concrete at 2 o'clock in the morning is to ridicule realities. The photographs introduced in evidence showed also that a concrete moulding overhung this narrow curbing strip so that the plaintiff even standing on one foot could not have rested at full length with his back to the wall. The plaintiff simply *had* to get away from the spot where the street car left him. Even if he

abandoned his original intention to go to the Dixie Inn, he still could not remain on his tiny island refuge where he could become a target for other traffic: "Q. If you had stayed where you are, you could have avoided an accident? A. If I stayed where I was, a car might have come down the other way and hit me, because there was nothing there but a little curb."

Thus, the sheer physical properties of the situation compelled the plaintiff to strike away from his stylitic* perch. While admitting that a pedestrian may legally cross a street between intersections, the Majority still sees fault in the plaintiff's attempt to get away from his concrete traffic prison cell.

There is no evidence that the automobile which collided with the plaintiff was in sight when the plaintiff stepped into the cartway. Thus, he could not be convicted of contributory negligence for this original step. When he reached the center of the road an automobile loomed into view 160 to 170 feet away. The Majority says that "if a pedestrian voluntarily walks into the path of an oncoming vehicle when it is dangerously near, he is barred by his negligence from any recovery. Is an automobile "dangerously near" when it is 170 feet away, and the pedestrian has only 25 feet to travel? The Majority has no trouble in answering that question in the affirmative. Giving the plaintiff the benefit of every doubt, as we are required to do, I can only categorically answer that question in the *negative.*

The Majority quotes at length from the plaintiff's testimony which shows that he did become flustered

---

* It will be recalled that Simon Stylites, from whose name derives "stylitic", lived atop a pillar for 37 years to do public penance and make vicarious atonement for others' sins. No such assumed duty rested on the plaintiff here!

and excited as the car swept toward him. He said: "I saw the car come and I thought I could make it and I kept on going." Was it unnatural or unreasonable for him to assume that with a car 170 feet away he could negotiate 25 feet before the car reached him? The driver of the car apparently travelled faster than the plaintiff assumed he was travelling or perhaps even increased his speed as he bore down on the plaintiff, and the plaintiff became excited. If, in that stress of circumstance, he did what he should not have done the test of contributory negligence is not what, in retrospect, might have been the wise thing to do but whether he acted as a reasonably prudent person would have acted. As the plaintiff himself stated: "I tried to run. I got excited. *Everybody would try that.*" In a split second he had to decide whether he should pass in front of the car, dash back, or stand still. Any one of these possibilities offered a danger of its own. Whether his judgment was that of a reasonable man was a question for the jury, and, as we said in *Brown v. Beaver Val. M. C.,* supra, "we are bound by its determination of it."

The plaintiff was struck when he was three-fourths of the way across the street, which means that he travelled *12 feet* while the car travelled *170 feet.* That does not to me sound like conduct which should deny a citizen of the right to have a jury pass upon the question as to whether he did what the average reasonable person could well have done.

This Court has said almost to the point of satiety: "Judgment can be entered for the defendant only if the evidence, viewed in the light most advantageous to the plaintiff, resolving all conflicts therein in his favor, and giving him the benefit of every fact and inference pertaining to the issues involved which may be

reasonably deduced therefrom, would not justify a verdict and judgment in his favor." (*Mellott v. Tuckey,* 350 Pa. 74.)

With this kind of a compass to guide deliberations in this case it is incomprehensible to me how the logic of the Majority leads to an affirmance of the lower court which granted a compulsory nonsuit in favor of the Railways Company and judgment on the record in favor of the defendant Attilo DeFelice, the operator of the automobile which struck the plaintiff.

This Court has also said to the point of saturation that in reviewing cases where the plaintiff has been nonsuited or judgment has been entered on the record that the evidence must be read in the light most advantageous to the plaintiff. (*Jones v. Carney,* 375 Pa. 32). However, in the instant case that rule has been honored more in the breach than in the observance. A street car passenger is discharged in a danger zone and, by force of necessity he proceeds to a point of safety when he is struck by a car whose driver must have seen him 170 feet away. Even if this testimony were regarded with cold, impassive neutrality uncolored by the advantageous inferences which, under our law, the plaintiff is entitled to, it still could not be said that what the plaintiff did was so devoid of reflection and innate care that he can summarily be ordered out of court on the grounds of contributory negligence.

The facts in the case of *O'Malley v. Laurel Line Bus Co.,* 311 Pa. 251, 255 were somewhat like those in the litigation before us. There, the plaintiff was discharged by the driver of a motor bus at a non-regular bus stop. As the plaintiff alighted and started toward the sidewalk he was struck by an automobile. In the ensuing lawsuit the jury was unable to agree on a verdict, and the Court entered a judgment in

favor of the defendant. Upon appeal this Court reversed, saying: "If the person in charge of a car used for the carriage of passengers for hire, knowingly permits one of them to get off the vehicle at a dangerous place, which is not the usual stopping place, and the dangerous character of which the passenger could not see and did not know, the carrier will be liable for the resulting injuries, if any, to the passenger."

This Court also applied there the rule which it has ignored here, namely, "If two or more negligences are existing at the time of an injury and concur in producing it, the fact that one preceded the other slightly in point of time is a matter of no moment, and the rule as to concurrent negligence, under which both the parties are held jointly and severally liable, and not that of proximate and remote cause, will be applied."

Even if the action of the motorman in this case, standing alone, would not have precipitated an accident yet it concurred with another event to produce the plaintiff's injury, the plaintiff still has the right to recover. In *Burrell Twp. v. Uncapher*, 117 Pa. 353, 363, this Court said: "If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, *and both circumstances are closely connected with the injury in the order of events*, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time." There can be no doubt that both circumstances here were closely connected with the plaintiff's injury. Whether the plaintiff himself was at fault, as already stated, was a question for the jury.

I dissent.