# Trump v. Weir

*Gilbert P. High*, for plaintiff.
*Alexander Knight*, for defendant.

FORREST, J., April 17, 1955.—This is an action in trespass by Elizabeth T. Trump, the seller of certain real estate, against C. Raymond Weir, a registered professional engineer, for damages allegedly sustained as a result of defendant's carelessness in the preparation of a survey and description ordered by plaintiff. The area surveyed was shown as 22.763 acres whereas the actual acreage was 23.763 acres. Plaintiff alleged that "in reliance on the description of the plot prepared by defendant, said description was used in an agreement of sale . . . whereby plaintiff sold 22.763 acres at a price of $2,000.00 per acre", and that as a result she suffered the loss of the price of one acre or $2,000. The implication in the complaint is that the sale price was computed on the basis of acreage and that if plaintiff had known the correct acreage before the sale, she would have obtained an additional consideration of $2,000.

The understatement of area admittedly resulted from carelessness on the part of defendant. However, the trial judge entered a compulsory nonsuit for the reason that plaintiff failed to show that she sustained any damage.

The alleged liability is predicated upon negligent performance of a contract, and the action is in trespass, though the alleged liability arises out of contract. In this respect the case resembles Kunkelman v. Dechant et al., 91 Pa. Superior Ct. 589, 594 (1927), where it was said:

"Defendants' undertaking implied that they possessed the skill and ability sufficient to enable them to perform the required services at least ordinarily and without neglect. The law implied a promise that they would execute the business intrusted to their management as engineers in this case with a reasonable degree of skill and care. They were bound to perform that duty with reasonable skill and care, and upon their failure so to do . . . they were liable for negligence in that respect."

In determining whether the compulsory nonsuit was proper, the court must consider the testimony and the reasonable inferences therefrom in a light most favorable to plaintiff: Jones v. Carney, 375 Pa. 32 (1953); Harris v. DeFelice, 379 Pa. 469 (1954); "a compulsory nonsuit can be entered only in a clear case when all of the facts and inferences lead unerringly to but one conclusion": Schneider v. Sheldon, 380 Pa. 360, 365 (1955).

The evidence presented by plaintiff may be summarized as follows: The acreage designated on defendant's plan was 22.763. The acreage indicated on the description by metes and bounds prepared by defendant was 22.763, "be the same more or less", Clark W. Coleman, real estate broker for more than 30 years, testified that he had been retained by plaintiff to sell the ground and that he had advertised it at $3,000 per acre. Upon inquiry by Mr. Ludlow of Mr. Flood's office, Mr. Coleman stated that he would recommend selling at the rate of $2,000 per acre. Mr. Ludlow then asked whether he would recommend sale of the property for $45,000. Mr. Coleman stated that he

would. He telephoned plaintiff and told her of the conversation with Mr. Ludlow. He recommended that she settle for $45,000 because he considered that, "for all intents and purposes", it was $2,000 per acre. She agreed to sell for $45,000 if Mr. Coleman thought it was the best price obtainable. Relying on the accuracy of the plan prepared by defendant, Mr. Coleman approved the price, and prepared the agreement of sale using the description furnished by defendant, including the words "containing 22.763 acres of land be the same more or less". The agreement did not specify a price per acre.

Before the survey was made, plaintiff told defendant that she wanted to retain a portion of her ground and to sell the balance and Mr. Coleman stated to him that she intended to ask $3,000 per acre.

After the error was discovered, Mr. Coleman tried unsuccessfully, through the buyer's real estate agent, to renegotiate the sale so as to increase the sale price to $47,000. He stated that he had received several offers lower than $45,000 for the tract and several higher. Mr. Coleman labeled the conditions of the higher offers—10 percent in cash and the balance in the form of purchase money mortgage with clause providing for release of liens as sales would be made lot by lot—"ridiculous" and unacceptable. The sale at $45,000 amounts to approximately $1,976 per acre and the difference between the actual sale price and the price if the property had been sold at the rate of $2,000 per acre was approximately $526. However, there was not the slightest evidence from which a jury could have found directly or by inference that plaintiff would have been able to obtain a better offer than $45,000. The buyer did not testify, nor was there any inkling, that his offer was computed on the basis of a certain price per acre. The offer was a flat figure for the ground.

Plaintiff contends that it would be unreasonable to require a purchaser, under these circumstances, to admit under oath that he would have paid more for the property if he had known that he was acquiring an acre more than specified in the agreement. This may or may not be true. However, the ground is evidently adaptable to subdivision and the construction of residences. Any number of real estate experts and builders might have been called to testify that the market value of the property exceeded $45,000 or that they would have been willing to buy at a better price than $45,000 if they had known of the fact that the ground contained an acre in addition to the 22.763. They were not called. Mr. Coleman himself was not asked, nor did he volunteer, as to whether a better price than $45,000 could have been obtained if the property had been known to contain 23.763 acres, and had been listed and advertised as such. It is a well known fact that owners customarily overvalue their properties, when they contemplate selling. Plaintiff and her broker originally listed the premises at $3,000 per acre. Their conduct in actual negotiations indicates that they were willing to accept "practically" $2,000 per acre. The sale price represented 98.8 percent of the price computed at $2,000 per acre. With the record in such a state, the trial judge properly declined to let the case go to the jury. A jury may not render a verdict for plaintiff based upon sheer guess or conjecture.

In this case from the admissions in the pleadings and from the proofs, it is abundantly clear that no actual damages have been shown and, therefore, we are satisfied that the granting of a nonsuit was entirely proper.

*Order*

And now, June 17, 1955, the motion to take off the compulsory nonsuit is denied.