Curry, Appellant, *v.* Lehigh Valley Transit Company.

Argued June 3, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Paul A. McGinley,* for appellant.

*William S. Hudders,* with him *Butz, Hudders, Tallman & Rupp,* for additional defendant, appellee.

OPINION PER CURIAM, June 28, 1957:
This case is affirmed on the able and comprehensive opinion of Judge KENNETH H. KOCH, writing for the court below, as reported in 8 D. & C. 2d 544.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
No one can know what was in the mind of Edwin Ralph Litzenberger, except perhaps himself, as he stood at the controls of his 40-passenger street car and bowled along over West Broad Avenue on his way from Allentown to Bethlehem on the afternoon of November 7, 1951. While we cannot hazard a guess as to the nature of his thoughts on this particular journey, it is comparatively safe to guess that they were not devoted to traffic moving in the opposite direction on the adjoining motor highway. As he approached a carstop at Grandview Boulevard he noted a truck travelling westwardly, that is, coming toward him on the contiguous cartway. It was about 200 feet away from him travelling at something less than 50 miles per hour. He looked at it, like a sleepy idler on a freight train momentarily opens his eyes to a passing express. Litzenberger looked at the truck and went back to his thoughts, if any. One thing is certain: the truck passed out of his consciousness. He "didn't pay any more attention" to it.

A moment or two later he received a signal from a passenger to stop at Grandview Boulevard. He did so, threw open the door, and, in the immediate instant, there was a crash. The forgotten and ignored truck

was trampling over the body of the passenger (Mrs. Josephine Curry) whom Litzenberger had mechanically discharged to her fate.

Was he negligent? My colleagues do not think so. They cite The Vehicle Code which says that a motorist must not pass a street car which has stopped for the purpose of discharging passengers. They cite the case of *Klingensmith v. West Penn Rys. Co.*, 279 Pa. 336, and quote: "The legislature having enacted a law forbidding the driver of an automobile to pass a standing street car on the side from which passengers are being received or discharged, the railway company was not bound to anticipate that automobilists would disregard the law."

But they do not quote from the case of *O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251, 254, where we said: " 'A common carrier for hire owes to its passengers the highest degree of care and diligence in carrying them to their destination and [in] enabling them to alight safely . . .' and to avoid any possible danger while doing so".

Also, in quoting from the case of *Klingensmith v. West Penn Rys. Co.*, they do not quote all the law there proclaimed. In that case a pedestrian was killed by an automobile when about to board a street car. This Court absolved the railways company but, Justice SADLER, in writing for the Court, sententiously added: "On the other hand, his [the motorist's] negligence would not relieve the defendant, [the railways company], if its lack of proper care contributed to the injury, for, where two or more causes combine to produce injury to a third person, both negligent parties are jointly and severally liable". *That* is the case at bar. Of course, there is no doubt about the liability of the truck owner (Napolitano), (and it has already been adjudicated),

but the accident could not have happened had it not been for the cooperating negligence of the motorman.

Litzenberger knew that the truck would pass immediately close to the car tracks; he knew that if the truck did not stop before it reached the intersection it would pass over the very spot where he intended to discharge his passenger. It is true he was not required to anticipate the negligence of any motorist, but this non-anticipation did not excuse him from doing what humanity (speaking through the law) proclaimed to him should be done to avert an almost certain collision.

When the passenger Mrs. Curry stepped from the street car the truck was practically on top of her; it was only an "arm's length" away. Was it not negligence for the motorman to discharge Mrs. Curry into the barking jaws of this danger? From his elevated position on the platform of the car, Litzenberger could see what was hidden from Mrs. Curry as she negotiated the two steps from the car to the pavement. Was there not a duty on Litzenberger's part to see where he was depositing Mrs. Curry when a glance would reveal to him the state of the depositing place?

The defendant cannot hide behind the rule that a motorman is not required to anticipate a violation of the law. Where a motorman sees an oncoming motor vehicle at such a latitudinous distance from his street car that the alighting passenger is in no peril of being struck as he or she touches the pavement, the motorman is of course not required to expect that the motorist may fail to stop at the intersection which the passenger must traverse. But this is not that situation. This is the case where the motorman *knew or should have known* that the motorist was already actually violating the law and, in spite of that knowledge, he, the motorman, practically pushed his helpless passenger into the track of the onrushing peril.

584

The Trial Judge practically dusted his hands of all concern about this case, as do the Majority here, by citing the case of *Reid v. Scranton Company*, 339 Pa. 225, where the plaintiff was hit by an automobile as she descended from a street car, and the railways company was absolved of blame. But in that case the car had reached the end of the line when the passenger was discharged, and *there was no evidence that the motorman had seen the automobile before it struck the plaintiff*. The situation here is all to the contrary. The motorman did see the truck and if his thoughts had not been wool-gathering he would still have seen the truck as he was bringing his street car to a stop. There was nothing to obstruct his view, there was nothing to distract his attention, there was nothing to prevent his giving to his passenger the care which the law requires, namely, "to afford to the passenger a reasonable opportunity to alight and pass out of danger." (*O'Malley v. Laurel Line Bus Co.*, 311 Pa. 251). There was definitely a duty on his part, when his car was stopped, to look at the steps where his charges would be alighting or boarding. Had he done this he would not have opened the door until the Napolitano truck had passed. His failure to look at the moment the danger was apparent, and the risk avoidable, constituted negligence of a particularly flagrant character.

Litzenberger had been a motorman for nine years, he was familiar with this particular route, he knew how motor vehicles practically hugged the side of street cars when they passed. The most elementary caution, to say nothing of the high degree of care required by the law, would have required him to be on the alert, once he knew that the Napolitano truck was in the vicinity and bearing down on the very point where he intended to stop to discharge the plaintiff. All that Litzenberger had to do before opening the door was to lift his eyes

to the cartway and bring his migratory thoughts back to terra firma—and to his job, the most important function of which was to save his passengers from preventable harm. If he had given to Mrs. Curry just one or two seconds' attention, the accident would never have occurred. Since the truck was only 3 feet away when Mrs. Curry stepped to the pavement, it could only have been just a few more feet away when Litzenberger was about to open the door. When a vehicle is so close that in the matter of a second or two it will strike a passenger at a car stop, it is useless to talk about not being required to anticipate the negligence of the motorist. Here it was not a matter of anticipation; it was a matter of *realization.* The motorist had already passed the point where he could stop for the carstop.

When we said in *Brown v. Ambridge Yellow Cab Co.,* 374 Pa. 208, 212, that "It is the duty of a carrier of passengers to set them down at the terminus of their journey, and to afford them a sufficient time to alight in safety," we meant also a sufficient space in which to alight in safety. Certainly a motorist would be charged with negligence if he caused a passenger to alight at a hole in the street obvious to him but hidden from the passenger, or at a body of water visible to him but not to the passenger—regardless of how the hole was made or how illegally the water was permitted to gather at that point. What is the difference between discharging a passenger into a hole or in the path of a fire engine, a runaway horse, or a motor vehicle patently and presently violating the motor code?

In conclusion we pose the question: Is a street car motorman negligent when he sees a truck only 200 feet away advancing toward a stopping place at a speed of something less than 50 miles per hour, when he gives it one glance and does not look at it again, when he knows that the truck must pass at the very point where

he will discharge passengers, and when he opens the door of the street car to discharge a passenger, the motor vehicle is only 3 feet away? Is it reasonable to say that no intelligent person could believe the motorman negligent under those circumstances? Was it fair and just and legal for the Trial Court to nonsuit the injured passenger under those circumstances? Was this not all a question for the jury?

This Court has said many times: "A nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the plaintiff, could determine in his favor the controlling issues involved." (*Virgilio v. Walker & Brehm*, 254 Pa. 241, 244)

Either this language will have to be modified or it will have to be obeyed. I believe that once this Court lays down a certain rule of interpretation, a duty is created, and if this Court fails to discharge that duty with punctilio, there may well follow a lessening of discipline on the part of street car crews to discharge their passengers safely.